UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KIERNAN MILLS,                                   :
                                                 :
                         Plaintiff,              :
                                                 :     **OPINION AND ORDER**
          -against-                              :     **15-CV-05502 (DLI)**
                                                 :
NANCY A. BERRYHILL,[1]                           :
Acting Commissioner of Social Security,          :
                                                 :
                         Defendant.              :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

On October 23, 2012, Plaintiff Kieran Mills ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "Act"), alleging disability since October 5, 2012. *See* Certified Administrative Record ("R."), Dkt. Entry No. 7 at 73, 178-179. On March 8, 2013, Plaintiff's application was denied and he timely requested a hearing. *Id.* at 90-103. On January 9, 2014, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Jay L. Cohen (the "ALJ"). *Id.* at 35-72. In a decision dated February 6, 2014, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. *Id.* at 14-34. On July 21, 2015, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-7.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). *See* Complaint ("Compl."), Dkt. Entry No. 1. After the Commissioner filed her answer, Plaintiff moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking reversal of the denial of benefits. *See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 14. The Commissioner cross-

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Therefore, the Court has substituted her as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d).

moved for judgment on the pleadings seeking affirmance of the denial of benefits. *See* Mem. of Law in Supp. of Def.'s Cross Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 16. For the reasons set forth below, Plaintiff's motion is granted and the Commissioner's cross-motion is denied. This action is remanded to the Commissioner for additional proceedings consistent with this opinion.

## BACKGROUND[2]

### A.    Non-Medical and Self-Reported Evidence

Plaintiff was born in 1970. R. at 163. He graduated high school and attended one year of college. *Id.* at 39, 179. From 1995 to June 2012, Plaintiff worked as a firefighter for the New York City Fire Department. *Id.* at 40, 211-212. Plaintiff's work as a firefighter included rescue and recovery efforts at the World Trade Center disaster site on and after September 11, 2011. *Id.* at 175, 445. Following disability retirement from the New York City Fire Department in 2012, Plaintiff was employed by a school in Queens, New York where he did light maintenance work two or three days per week. *Id.* at 57-58. After a few months, he ceased working because he was "laid up" after work. *Id.* At the age of forty-two, Plaintiff, who resides with his wife and three minor children, applied for DIB. *Id.* at 39.

In connection with his application for benefits, Plaintiff completed a "function report" in which he stated that he lived with his family, spent an average day reading, going online, watching television, and waiting for his kids to get home. *Id.* at 190-91. He indicated that he was unable to "lift heavy stuff by [him]self anymore," climbed stairs slower, tried to avoid kneeling and squatting, did not walk very far, was sore when he sat, and "always sore" when he stood up. *Id.*

[2] Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of said record. Accordingly, the following background is taken substantially from the background section of the Commissioner's brief.

at 195-96.  Although Plaintiff no longer had asthma attacks, he had difficulty breathing, "once in a while," upon exertion.  *Id.* at 201.  He reported that he had pain in his hands and that his arms were very weak.  *Id.* at 196.  Plaintiff stated that constant pain spread from his lower back to his right leg.  *Id.* at 199.  He also reported anxiety since 1991, which had worsened over time and was induced by "stress and anything related to 9/11."  *Id.* at. 201-02.  As a result of his condition, Plaintiff socialized less with his friends.  *Id.* at 195.

Plaintiff reported that he could attend to his personal care activities without difficulty, which included preparing "basic" meals a couple times a week.  *Id.* at 191-92.  He did "light cleaning around the house, but did not do any "heavy work."  *Id.* at 193.  He drove, but did so only a couple of times per week.  *Id.* at 194.  A few times per week, Plaintiff helped his kids with their homework, visited church, his doctor's office, and his children's school.  *Id.* at 195.  He stated that the pain started to affect his activities in 1997 and again in November 2009.  *Id.* at 198.

On January 9, 2014, Plaintiff, represented by counsel, testified before the ALJ that he currently could not work due to neck injuries that had worsened over the years.  *Id.* at 41.  He stated that he had a "tumor in [his] head that doesn't stop [him] from work[ing], but it weighs tons."  *Id.*  Although he could not concentrate very well, he did not believe he had memory problems.  *Id.*  Plaintiff testified that he could sit for about forty minutes to an hour at a time, stand for approximately the same amount of time,  could walk about ten blocks, and was "up and down all day at home."  *Id.* at 41-42.  While he got along with people, he found himself "to be quite short."  *Id.* at 46.

On an ordinary day, Plaintiff reported having breakfast, reading a newspaper, watching television, and sometimes shopping with his wife "a little."  *Id.* at 54.  Occasionally, he helped his wife cook, and tried to assist with cleaning and laundry.  *Id.* at 54-55.  He drove a car locally and

attended his kids' sporting events where he sat on the bleachers for "a little while" before "lean[ing] against the fence." *Id.* at 43-44, 55. Plaintiff testified that he could lift a bag of groceries, but no longer lifted his kids. *Id.* at 45. He stated that, approximately five days a week, he sat in a hot tub, which was the "best thing for [his] neck and back." *Id.* at 55.

Plaintiff testified that he had a neck fusion surgery in 2011, which lessened the pain and numbness in his arms, but did not remove it. *Id.* at 46-47. When he reported the continued pain to his doctor, the doctor told him that it would go away. *Id.* At the time of his testimony, Plaintiff was not receiving any treatment for his neck. *Id.* at 49.

Plaintiff stated that he had back surgery in 1997, and that his doctor told him that he would need surgery again in five years. *Id.* The surgery "made [his] back good enough to put a Scott Pack on and do [his] job," but he has had pain down his legs since the surgery. *Id.* Although he currently is not receiving treatment for his back, he stretches and takes Motrin, Advil, or Aleve daily. *Id.* at 50-51. Plaintiff further testified that he sees a psychiatrist once a year and a psychologist or therapist weekly. *Id.* at 52. His psychiatrist prescribed Buspar, Lexapro, and Ativan. *Id.* at 53. In approximately 2001, Plaintiff was hospitalized for "mental problems." *Id.*

During Plaintiff's hearing, Dr. Jennifer Blitz, a licensed clinical psychologist, testified as to whether Plaintiff had a severe mental impairment. *Id.* at 60-63, 491-94. Dr. Blitz noted that Plaintiff's treating physicians had diagnosed him with obsessive compulsive disorder, major depressive disorder, and post-traumatic stress disorder. *Id.* at 60. Dr. Blitz opined that, because of his mental impairment, Plaintiff "would be limited to simple tasks; occasional contact with coworkers, supervisors, and the public, and low stress." *Id.* at 61. She further testified that there was no evidence in the record to suggest that Plaintiff could not work five days consistently per week or stay at work for eight hours per day. *Id.*

Amy H. Leopold, a vocational expert ("VE"), also testified during Plaintiff's hearing. *Id.* at 63-71. The ALJ questioned the VE regarding jobs potentially available to a hypothetical individual of the same age, with the same education and work experience as Plaintiff who had the following limitations: (1) light exertional limits; (2) simple work with occasional contact with supervisors, coworkers, and the public; (3) no requirement to make job related discretionary decisions or engage in job related conflict situations; and (4) not subject to production rate quotas. *Id.* at 67-68. The VE testified that such a hypothetical individual could not perform Plaintiff's past work as a firefighter, but could perform other work that existed in the national economy. *Id.* at 68. The VE identified the following jobs that such a hypothetical individual could perform: (1) file clerk; (2) non-postal mail clerk; and (3) housekeeper. *Id.* The VE next considered sedentary jobs with the same limitations and identified surveillance systems monitor as a job the hypothetical individual could perform. *Id.* at 69.

## B. Relevant Medical Evidence

### 1. Medical Evidence Prior to October 5, 2012

Plaintiff's complaints of neck and shoulder pain date back to a slip and fall accident on November 8, 2009, which occurred while he was working as a firefighter. *Id.* at 272-73, 445-46. Between 2009 and 2012, Plaintiff sought treatment for his neck and shoulder pain from multiple physicians including Dr. Anne M. Kelly, Dr. Jennifer Solomon, Dr. William Main, Dr. Frank Cammisa, Dr. James Farmer, and Dr. Carl Heise. *Id.* at 262-66, 275-77, 280-82, 287-90, 293-95.

A November 24, 2009, MRI of Plaintiff's shoulder showed "extensive partial articular and intrasubstance tear of the posterior fibers of the supraspinatus extending into the infraspinatus with intrasubstance extension into the infraspinatus," acromioclavicular joint arthropathy, and a SLAP tear with no involvement of the biceps anchor. *Id.* at 259. On December 31, 2009, Plaintiff

complained of left arm pain radiating to his hand to Dr. Kelly, an orthopedist. *Id.* at 445, 465. Dr. Kelly examined him and provided an injection to the shoulder. *Id.*

On January 5, 2010, an MRI of Plaintiff's cervical spine revealed bulging discs at C3-C4 and C4-C5 without stenosis, left paracentral herniations at C5-C6 and C6-C7 with thecal sac indentation and left foraminal herniation at "C7-T1" impinging upon exiting C8 root. *Id.* at 260. On March 1, 2010, Dr. Solomon, a surgeon, also examined Plaintiff for complaints of neck and shoulder pain related to his November 2009 accident. *Id.* at 272-73. Dr. Solomon observed multiple "disk herniations" and noted that all "range of motion worsen[ed] Plaintiff's cervical pain but [did] not cause any radiation pain." *Id.* at 273. Dr. Solomon recommended that Plaintiff undergo "an EMG[3] to evaluate for nerve damage from the disk herniations." *Id.* On March 23, 2010, Dr. Solomon conducted electrodiagnostic studies, which revealed left sided C8 radiculopathy. *Id.* at 267-71.

Plaintiff returned to Dr. Solomon on April 29, 2010, and reported that physical therapy had worsened his symptoms. *Id.* at 266. Dr. Solomon recommended epidural injections, which Plaintiff received on May 25, 2010. *Id.* at 262-65. On June 7, 2010, Dr. Kelly examined Plaintiff due to his complaints of "radicular pain down the right and left arms." *Id.* at 470. The examination showed left shoulder impingement and revealed pain with range of motion, with shooting pain down the right arm. *Id.* Dr. Kelly noted that Plaintiff had a "significant cervical radiculopathy." *Id.* On a follow up visit on July 14, 2010, Dr. Kelly concluded that the predominance of Plaintiff's shoulder pain related to his cervical spine and recommended cervical spine decompression and fusion surgery. *Id.* at 475.

---

[3] EMG is an abbreviation for electromyography.

On August 11, 2010, Plaintiff saw Dr. Main, a spinal surgeon, for surgical consultation. *Id.* at 276-77, 445. During the consultation, Plaintiff complained of weakness in his arms. *Id.* Dr. Main assessed herniated discs at the C5-C6 and C6-C7 levels with resulting compression of the nerve roots based on the January 2010 MRI results. *Id.* Dr. Main recommended surgery. *Id.*

On October 18, 2010, Plaintiff saw Dr. Cammisa, a spinal surgeon, also for surgical consultation. *Id.* at 280-82. Plaintiff ranked his neck and right arm pain as "6 to 8/10 [and] his left arm [pain at] 4 to 6/10." *Id.* Based on his examination, Dr. Cammisa diagnosed cervical spondylosis, degenerative disc disease L5-S1, status post decompression L4-5, L5-S1, "[r]ule[d] out right shoulder pathology," and "status post colon resection for diverticulitis." *Id.* at 282. Dr. Cammisa recommended a high resolution MRI of the cervical spine, and noted that Plaintiff may be a candidate for surgery. *Id.*

On November 15, 2010, Plaintiff underwent a second cervical spine MRI, which revealed uncovertebral osteophyte formation at C3-C4, C4-C5 and C5-C6 without stenosis, a disc ridge complex at CS-C6 without cord compression, disc ridge complex and left uncovertebral spurring at C6-C7 with moderate left foraminal stenosis, left sided disc ridge complex at C6-C7, and central disc protrusion at T3-T4. *Id.* at 278-79.

On January 11, 2011, Plaintiff saw Dr. Heise[4] for a neurology consultation. *Id.* at 293-95. While Dr. Heise reviewed the November 2010 cervical MRI and noted that there did not appear to be any significant spinal cord impingement, he diagnosed some "mild impingement to the left side at C6-C7 and C5-C6, mainly in the lateral recess." *Id.* at 295. Dr. Heise's observations suggested "mild carpal tunnel syndrome." *Id.* Also on January 11, 2011, Dr. James Farmer[5] performed a

---

[4] The Record is silent as to Dr. Heise's specialty.

[5] The Record also does not state Dr. Farmer's specialty.

cervical myelogram, which revealed "small ventral extradural filling defects" at C5-6 and C6-7. *Id.* at 283-286.

On September 22, 2011, Dr. Main performed anterior cervical fusion, discectomy, and allograft reconstruction surgery at the C5-C6 and C6-C7 levels on Plaintiff. *Id.* at 298-351, 383-85. On October 12, 2011, Plaintiff visited Dr. Main with mild residual neck pain, but no pain radiating into the arms. *Id.* at 357. Dr. Main instructed Plaintiff to avoid "strenuous physical activity," but encouraged Plaintiff "to engage in light exercise, including walking, swimming, or cycling, as tolerated." *Id.* On November 9, 2011, Plaintiff again visited Dr. Main and reported "little or no residual pain in the arms." *Id.* at 354. About four months after his surgery, on January 25, 2012, Plaintiff saw Dr. Main and reported "pain radiating into the left arm" and "residual pain in the neck." *Id.* at 506.

In a letter dated February 7, 2012, Dr. Main detailed Plaintiff's treatment history and noted that Plaintiff reported gradual improvement in his neck and arm pain post-surgery, and that x-rays of the cervical spine "showed gradual healing" at the fusion and bone graft sites at the C5, C6, and C7 levels. *Id.* at 379. Dr. Main stated that Plaintiff "continu[ed] to experience some degree of neck pain and stiffness on a regular almost daily basis" and that Plaintiff "report[ed] occasional, intermittent radiation of pain into the arms and persistent weakness and numbness." *Id.* at 380. Although Plaintiff's "overall quality of life [had] improved," Dr. Main indicated that Plaintiff "will almost certainly experience some degree of pain and functional impairment on a permanent basis." *Id.* Dr. Main wrote that it was his opinion that Plaintiff was "permanently and totally disabled and unable to return to his previous occupation as New York City firefighter." *Id.*

In a memorandum dated February 9, 2012, Dr. Kerry Kelly, Chief Medical Officer of the New York City Fire Department described Plaintiff's course of treatment for the back injury that

culminated in the surgery performed in September 2011. *Id.* at 445-46. Dr. Kelly examined Plaintiff and observed that he had decreased lateral range of motion of his neck and decreased extension and absent reflexes in the upper extremity. *Id.* at 445. There was no atrophy and full strength in Plaintiff's hands. *Id.* Dr. Kelly noted that Plaintiff was treated conservatively for a SLAP tear of his left shoulder, which had improved somewhat with physical therapy, but limited Plaintiff's range of motion and activity of that shoulder. *Id.* Dr. Kelly diagnosed status post cervical disc disease, status post two level fusion at the C5 through C7 levels with anterior plate fixation and discectomy, and also assessed a SLAP tear lesion of the left shoulder. *Id.* at 446. Dr. Kelly opined that Plaintiff was permanently unfit for firefighting duties. *Id.* On May 18, 2012, the New York City Fire Department Medical Board determined that Plaintiff was permanently disabled from full firefighting duties, but noted that Plaintiff "may engage in suitable and gainful occupation." *Id.* at 497. During the examination, the Medical Board observed decreased "4/5 strength of the left wrist extensors and left hand grip," along with "some dysesthesias involving the palms of both hands" and "paraesthesia involving the left forearm." *Id.*

### 2. Medical Evidence After October 5, 2012

On January 14, 2013, Dr. Steven Newman, a psychiatrist, completed a medical questionnaire indicating that Plaintiff had received mental health treatment from him since 1998. *Id.* at 447-53. Dr. Newman set forth a diagnosis of obsessive compulsive disorder and recurrent major depression. *Id.* at 447. He concluded that Plaintiff's ability to function in a work setting, sustained concentration and persistence, social interaction, and adaption were limited. *Id.* at 450-52. Dr. Newman found Plaintiff's attention and concentration, information, and insight and judgment to be fair. *Id.* at 450.

At the Commissioner of Social Security's request, Dr. Joyce Graber, a family practice physician, performed a consultative internal medicine examination on January 17, 2013. *Id.* at 454-57. Plaintiff reported daily neck pain and headaches since 2009, and back pain radiating down the right leg since 1996. *Id.* at 454. Plaintiff further complained of pain and numbness in his bilateral hands and arms and difficulty breathing since the September 11, 2001, attacks. *Id.* He stated that he could walk about ten blocks before needing to stop, and that his normal activities included driving, cooking once or twice a week, showering, dressing himself on a daily basis, watching television, reading, and going to church. *Id.* 454-55.

Upon examination, Dr. Graber observed that Plaintiff appeared to be in no acute distress, walked with a normal gait, and was able to walk on his heels and toes without difficulty. *Id.* at 455. Plaintiff could squat about three-quarters of the way down, maintained a normal stance, used no assistive devices, and needed no help changing for the examination. *Id.* Dr. Graber noted that Plaintiff's hand and finger dexterity was "intact," his grip strength was "5/5 bilaterally," and no muscle atrophy was evident. *Id.* at 456. Dr. Graber reported that the lumbar spine showed full flexion and full range of motion of the shoulders, elbows, forearms and wrists bilaterally. *Id.* Dr. Graber opined that Plaintiff "has no physical limitations." *Id.* at 457.

Also, on January 17, 2013, at the Commissioner of Social Security's request, Dr. Toula Georgiou, a psychologist, performed a psychiatric consultative examination on Plaintiff. *Id.* at 458-61. Dr. Georgiou noted that Plaintiff's psychiatric history included treatment for depression in the emergency room in 1998 and that he had been "in and out of treatment since 1995." *Id.* at 458. Dr. Georgiou diagnosed post-traumatic stress disorder and depressive disorder. *Id.* at 461. Dr Georgiou noted that Plaintiff "may have difficulty maintaining a regular schedule, having to perform complex tasks, and making decisions in the work setting." *Id.* at 460. Dr. Georgiou stated

that stress exacerbated Plaintiff's psychiatric difficulties and "may significantly interfere with [Plaintiff's] ability to function on a daily basis." *Id.*

On April 17, 2013, Dr. Debra Cirrincione, a psychologist, noted in a medical questionnaire that Plaintiff had been diagnosed with obsessive compulsive disorder, post-traumatic stress disorder, and "major depressive episode, recurrent, severe." *Id.* at 482-88. Dr. Cirrincione noted that she had treated Plaintiff on a weekly basis since March 2009. *Id.* at 482. She further noted that Plaintiff was unable to stay focused when anxious and occasionally became easily agitated and socially isolated. *Id.* at 486-87. In a letter dated December 18, 2013, Dr. Cirrincione wrote that Plaintiff was unable to return to work because of his chronic anxiety coupled with stress resulting from the flooding of his home during Hurricane Sandy. *Id.* at 500-01.

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an appeal in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by more than a mere scintilla of relevant evidence that "a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp.2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.      Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, the claimant's impairment must have been of such severity that she is unable to do her previous work or, considering her age, education, and work experience, she could not have engaged in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting

medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). At the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. § 404.1520(f). Finally, at the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g). At this final step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002).

## C.     The ALJ's Decision

On February 6, 2014, the ALJ issued a decision denying Plaintiff's claim.  R. at 17-34.

The ALJ followed the five-step procedure in making his determination that Plaintiff had the RFC

to perform light work, as defined in 20 C.F.R. § 404.1567(b), with additional restrictions.  *Id.* at

21.  As a result, the ALJ determined that Plaintiff was not disabled.  *Id.*  At the first step, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since October 5, 2012, the

alleged onset date.  *Id.* at 19.  At the second step, the ALJ found the following severe impairments:

left shoulder supraspinatus tear and superior labrum anterior to posterior ("SLAP") tear, cervical

disc herniation repaired by operation, lumbar laminectomy in 1997, obsessive compulsive

disorder, major depressive disorder, and post-traumatic stress disorder.  *Id.*  At the third step, the

ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal

the severity of an impairment included in the Listings.  *Id.*

At the fourth step, the ALJ found that Plaintiff could perform light work, as defined in 20

C.F.R. § 404.1567(b), with the additional limitations that Plaintiff "can perform simple work with

occasional contact with supervisors, co-workers, and the public."  *Id.* at 21.  The ALJ further found

that Plaintiff "should have no requirement to make job related decisions, engage in job related

conflict situations, or be subject to production rate quotas."  *Id.*  After concluding that Plaintiff

was unable to perform his past relevant work, the ALJ proceeded to the fifth and final step.  *Id.* at

27.  At this step, the ALJ, relying in part on the testimony of the VE, found that, considering

Plaintiff's "age, education, work experience, and residual function capacity," Plaintiff was

"capable of making a successful adjustment to other work that exist[ed] in significant numbers in

the national economy."  *Id.* at 28.  Accordingly, the ALJ determined that a "finding of 'not

disabled[,]' therefore [was] appropriate[.]"  *Id.*

**D.      Analysis**

Plaintiff moves for judgment on the pleadings, contending that the ALJ's RFC finding is not supported by substantial evidence because it improperly discounts Plaintiff's degree of limitation to his arms and hands due to cervical radiculopathy. Pl. Mem. at 17-20. Plaintiff asserts that, "in light of the available medical evidence corroborating [his] complaints of pain, numbness, and weakness in his arms, it was error for the ALJ to conclude that [he] has no limitation for using his arms for reaching, handling, and fingering." *Id.* at 18. The Commissioner cross-moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's claim on the ground that the ALJ's RFC finding is supported by substantial evidence. Def. Mem. at 15-20.

**1.  Plaintiff's RFC**

**a.      The ALJ's RFC Assessment**

As discussed above, the ALJ found that Plaintiff retained the RFC to perform light work, with the additional limitations that Plaintiff: (1) perform simple work with occasional contact with supervisors, co-workers, and the public; (2) have no requirement to make job related decisions or engage in job related conflict situations; and (3) not be subject to production rate quotas. R. at 21. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Pursuant to the regulation, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id.*

The ALJ based his RFC finding first on evidence documenting Plaintiff's physical limitations. R. at 21. The ALJ discussed Plaintiff's medical test records, which included the MRIs

conducted on November 24, 2009, January 5, 2010, November 15, 2010, and the January 11, 2011, cervical myelogram and CT scan of Plaintiff's cervical spine.  R. at 21-22.  The ALJ also noted that "hospital records and treatment notes also support[ed] the residual functional capacity."  R. at 22.  The ALJ acknowledged the treatment and examination notes from Plaintiff's visits to Dr. Kelly, Dr. Solomon, Dr. Cammisa, Dr. Farmer, Dr. Heise, Dr. Main, and Dr. Graber.  In making the RFC assessment, the ALJ mentioned that Dr. Main's treatment notes reflected that "claimant alleged neck pain with numbness, tingling, and weakness of the arms, but balance, coordination, and manual dexterity were unaffected."  R. at 23.  The ALJ gave "[s]ome weight" to Dr. Main's opinion that Plaintiff was "permanently and totally disabled and unable to return to his previous occupation as a New York City firefighter."  R. at 24.  The ALJ acknowledged the treatment notes of Drs. Heise, Farmer, and Solomon, that discussed Plaintiff's allegations of pain and discomfort in his shoulders, arms, and hands.  R. 22-23.  Finally, the ALJ discussed Dr. Graber's opinion that "claimant had no physical limitations" and rejected it "[t]o the extent that the consultative exam indicates that the claimant can perform more than light work."  R. 24-25.

Next, the ALJ reviewed relevant evidence concerning Plaintiff's mental impairments.  R. 24-26.  The ALJ discussed Dr. Newman's diagnoses of obsessive compulsive disorder and recurrent major depression and Dr. Newman's opinion that "the claimant had limitations in sustained concentration, persistence, social interaction, and adaption."  R. at 24.  The ALJ rejected Dr. Newman's opinion to the extent it was "inconsistent with the testifying expert's" opinion.  *Id.* The ALJ gave "some weight" to Dr. Georgiou's opinion that "claimant may have difficulty maintaining a regular schedule, having to perform complex tasks, making appropriate decisions in the work setting, relating with others, and dealing with stress."  *Id.* at 25.  Finally, the ALJ also

gave "some weight" to Dr. Cirrincione's opinion that "claimant had limitations with respect to sustained concentration, persistence, and social interaction." *Id.* at 25-26.

In reaching the conclusion that Plaintiff could perform light work, the ALJ determined that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. *Id.* at 26. The ALJ noted Plaintiff's testimony that he has not had "treatment for any of his severe impairments" except for seeing a therapist weekly. *Id.* at 27. The ALJ acknowledged that Plaintiff complained of pain in the neck, arms, and shoulder, but that he "has not received treatment." *Id.* Thus, the ALJ concluded that giving "the claimant every benefit of the doubt, he can perform at least light work." *Id.*

### b. The ALJ Improperly Determined Plaintiff's RFC

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ failed to consider the portions of Dr. Main's February 2012 medical opinion indicating that Plaintiff had limitations in his shoulders, arms, and hands. Pl. Mem. at 18-20. The Court agrees.

When making the RFC determination, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." *Mancuso v. Comm'r of Soc. Sec.*, 2015 WL 1469664, at *24 (E.D.N.Y. Mar. 30, 2015) (internal citation omitted). The ALJ must assess a claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1545(b). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Mancuso*, 2015 WL 1469664, at *24 (E.D.N.Y. Mar. 30, 2015) (internal

citation omitted). The Second Circuit has held that "remand is not necessary merely because an explicit function-by-function analysis was not performed" by the ALJ. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curium*). Yet, "remand may be appropriate" where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

Here, remand is appropriate because the ALJ's RFC determination is not supported by substantial evidence and did not address all of Plaintiff's relevant limitations. Although the evidence in the record concerning Plaintiff's pain and discomfort in his shoulders, arms, and hands is well documented, the RFC did not provide for any pushing, pulling, lifting, carrying, or reaching limitations. In fact, while the ALJ either explicitly acknowledged or made passing reference to the relevant medical evidence documenting Plaintiff's pain and discomfort, the ALJ failed to discuss how any of this evidence factored into his assessment of Plaintiff's RFC. *See De Leon v. Colvin*, 2014 WL 4773966, at *2 (E.D.N.Y. Sept. 24, 2014) ("Because the ALJ failed to explain how the evidence supported his RFC determination, remand is warranted."). Additionally, the ALJ did not address Plaintiff's testimony that the pain and numbness in his arms was all "still there." R. at 47. As a result, the RFC is not supported by substantial evidence because it is unclear to the Court how the ALJ arrived at the RFC determination without considering this evidence. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ("[W]e cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor."); *Pacheco v. Barnhart*, 2004 WL 1345030, at *4 (E.D.N.Y. June 14, 2004) ("[C]ourts in this Circuit have repeatedly held that an ALJ's 'failure to acknowledge relevant evidence or explain its implicit rejection is plain error.'") (internal citation omitted).

This Court has held that an ALJ may not employ a "pick and choose approach to evaluate

the evidence." *See Anderson v. Astrue*, 2009 WL 2824584, at *10 (E.D.N.Y. Aug. 28, 2009). Yet, that is precisely what occurred here. In making the RFC determination, the ALJ gave "some weight" to Dr. Main's February 7, 2012, opinion and concluded that the "opinion is not inconsistent with the overall record and the residual functional capacity[.]" R. at 24. As support, the ALJ relied on Dr. Main's statement that "the claimant reported gradual improvement of his preoperative symptoms of neck and arm pain." *Id.* However, the ALJ ignored the next paragraph of Dr. Main's letter, which stated that Plaintiff "will almost certainly experience some degree of pain and functional impairment on a permanent basis," due in part to his "occasional, intermittent radiation of pain into the arms, and persistent weakness and numbness." R. at 380. As this Court previously has stated, "[t]his 'pick and choose' approach to reviewing the evidence undermines the court's confidence in the ALJ's determination." *Anderson*, 2009 WL 2824584, at *10 (collecting cases). Indeed, the ALJ cannot "cherry pick from a medical opinion, *i.e.*, he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Zayas v. Colvin*, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016). Accordingly, on remand, the ALJ is directed to consider all the evidence in the record when assessing Plaintiff's capacity to perform the relevant functions and determining whether Plaintiff is disabled. *See Vazquez v. Comm'r of Soc. Sec.*, 2015 WL 4562978, at *14 (S.D.N.Y. July 21, 2015) ("Where an ALJ ignores relevant evidence that is before him and neglects to 'adequately explain which evidence' he rejects and why, remand is appropriate.") (internal citation omitted); 20 C.F.R. § 404.1529(c)(1).

The Commissioner asserts that the ALJ's RFC assessment is supported by substantial evidence because the ALJ considered Dr. Main's treatment notes and his "source opinion that Plaintiff needed to 'avoid strenuous activity[.]'" Def. Mem. at 17. According to the

Commissioner, Dr. Main's "opinion is reasonably consistent with the ability to perform light work." *Id.* "When a treating physician provides a favorable report, the claimant 'is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not.'" *Guerrero v. Colvin*, 2016 WL 7339114, at *12 (S.D.N.Y. Dec. 19, 2016) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). In this case, the Commissioner's argument is unpersuasive because the ALJ's review of Dr. Main's treatment notes and source opinion ignores the favorable portions of Dr. Main's assessment and the fact that, in the same documents, the doctor notes Plaintiff's repeated complaints of residual neck and arm pain and statements that Plaintiff should expect to experience such pain permanently. R. at 354, 357, 506. While "an ALJ is not required to reconcile every conflicting piece of evidence when making his or her determination of disability," *Jacobson v. Colvin*, 2014 WL 25493, at *9 (S.D.N.Y. Jan. 2, 2014), the ALJ was required to address the portions of Dr. Main's opinions favorable to Plaintiff.

The Commissioner's argument that Dr. Graber's January 2013 consultative opinion supports the ALJ's finding that Plaintiff can perform light work also is misplaced. Def. Mem. at 18. In the decision, the ALJ rejected Dr. Graber's opinion that "claimant had no physical limitations" to the "extent that the consultative exam indicates that the claimant can perform more than light work." R. at 24-25. As Plaintiff correctly notes, Dr. Graber reached her conclusion without reviewing Plaintiff's MRIs, the EMG, or the surgical reports. Pl. Mem. at 20. "This is particularly problematic when evaluating a consultative examiner's opinions as the Commissioner must 'give the examiner any necessary background information' about Plaintiff's condition." *Adesina v. Astrue*, 2014 WL 5380938, at *10 (E.D.N.Y. Oct. 22, 2014) (internal citation omitted).

Here, Plaintiff's "chief complaint[s]" before Dr. Graber were "daily" neck pain since 2009, "back pain" since 1996, "numbness in his arms and hands," and "pain in his arms and hands[.]" R. at 454. Despite these "chief complaint[s]," which were documented in Plaintiff's medical records, there is no indication that the Commissioner provided Dr. Graber with any of the relevant background information. While the language in 20 C.F.R. § 404.1517 does not require that the consultative examiner "be provided with all of a claimant's medical records and history," *Johnson v. Colvin*, 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015), the Commissioner should have provided Dr. Graber with Plaintiff's records that documented the history of his chief complaints. Without any of this information, Dr. Graber's opinion alone cannot support the ALJ's RFC determination. *See Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) (holding that without reviewing diagnostic MRI opinion of consultative examiner could not contradict treating physician's opinion).

Finally, the Commissioner's contention that Plaintiff's daily activities support the ALJ's finding that Plaintiff can perform light work is meritless. Def. Mem. at 17. In the decision, the ALJ noted that Plaintiff's activities of daily living included dressing, bathing, grooming, cooking simple meals, "transporting his children," and shopping "a little." R. at 20, 26. The ALJ concluded that in "activities of daily living, the claimant has mild restriction." *Id.* at 20. "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). Accordingly, without more, Plaintiff's report of his daily activities is not substantial evidence that he was not disabled or that he could perform light work. *See Nusraty v. Colvin*, 2016 WL 5477588, at *12 (E.D.N.Y. Sept. 29, 2016). Indeed, placing unwarranted reliance on Plaintiff's daily activities, in this case, would contravene the well

established principle that "the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Cabibi v. Colvin*, 50 F. Supp.3d 213, 238 (E.D.N.Y. 2014) (internal citation omitted) (collecting cases); *see also Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998) ("'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,'" such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'") (internal citation omitted).

## CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. Accordingly, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion. If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty (60) days of Plaintiff's appeal, if any. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (suggesting procedural time limits to ensure speedy disposition of Social Security cases upon remand by district courts).

SO ORDERED.

Dated: Brooklyn, New York
March 27, 2017

_____/s/_____
DORA L. IRIZARRY
Chief Judge